JUDGE JONES

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

11 CIV 4265

------------------------------------------------------------ x

VIACOM INTERNATIONAL INC., MTV
NETWORKS, a division of Viacom International
Inc., COMEDY PARTNERS, BET HOLDINGS
LLC and COUNTRY MUSIC TELEVISION, INC.,

                Plaintiffs,

            - against -

CABLEVISION SYSTEMS CORPORATION and
CSC HOLDINGS, LLC,

                Defendants.

------------------------------------------------------------ x

Civil Action No. _____

**COMPLAINT**

RECEIVED
JUN 23 2011
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Viacom International Inc., MTV Networks, Comedy Partners, BET Holdings

LLC, and Country Music Television, Inc. (collectively "Plaintiffs" or "Viacom"), by and for

their Complaint against defendants Cablevision Systems Corporation ("Cablevision Systems")

and CSC Holdings, LLC ("CSC") (collectively "Defendants" or "Cablevision"), allege as

follows:

## NATURE OF THE ACTION

1.     Viacom brings this action for damages and to enjoin Cablevision's unlicensed

broadband distribution of Viacom's programming.  Viacom is committed to meeting consumer

demand for broadband delivery of its programming.  To this end, Viacom has reached reasonable

agreements with several emerging and established digital media distributors so that they can

stream Viacom's content and also provide an outstanding user experience.  Viacom has made

clear that it is willing to discuss extension of similar rights to others — including Cablevision.

What Viacom cannot do, however, is permit one of its contracting partners, Cablevision, to

unilaterally change the terms of its contractual relationship.

2.      Viacom seeks injunctive relief and damages for Cablevision's breach of the parties' licensing and distribution agreements, Cablevision's acts of copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, and Cablevision's trademark infringement and false designation of origin under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et. seq.*, as well as declaratory relief under 28 U.S.C. § 2201.

3.      Viacom's claims arise out of Cablevision's April 2, 2011 launch of a computer application for Apple Inc.'s popular iPad tablet computer line of products (the "iPad App"). The iPad App allows Cablevision to stream linear feeds of Viacom's copyrighted entertainment programming through a cable modem to iPad tablets in violation of Viacom's contractual rights that limit Cablevision's rights to distribute Viacom's programming to cable television systems, as well as Viacom's intellectual property and other rights.

4.      The purpose of this action is to (i) enjoin Cablevision from further exploiting, without authorization, Viacom's rights in its prized copyrighted entertainment programming and world famous trademarks, (ii) seek damages for the violations that have already occurred, and (iii) obtain declaratory relief relating to Cablevision's material breach of the parties' agreements. Specifically, Viacom seeks to permanently enjoin Cablevision from further infringing Viacom's trademarks and engaging in the unauthorized distribution of Viacom's copyrighted entertainment programming to wireless portable devices via the iPad App.

5.      As a leading provider of entertainment programming, Viacom has had a long-standing distribution relationship with Cablevision, a leading cable television provider. Cablevision, doing business as Optimum, offers its residential customers three subscription services, two of which are relevant here — iO TV (digital television) and Optimum Online

2

(broadband internet).  Cablevision customers pay monthly fees for each of the services to which they subscribe.

6.      Viacom's business relationship with Cablevision has been memorialized in a series of written agreements and amendments that define the parties' respective rights and obligations.  These agreements do not grant Cablevision the rights to stream Viacom's entertainment programming to iPad tablets or other similar portable devices through a cable modem, and Viacom has not otherwise authorized Cablevision to engage in such distribution.

7.      Viacom, upon learning of the development of the iPad App, contacted Cablevision to voice its concerns and objections to the broadband distribution of its entertainment programming via the iPad App.  The parties thereafter entered into discussions and exchanged correspondence with respect to the issue.  On March 21, 2011, Viacom again informed Cablevision in writing that any broadband distribution of Viacom programming via the iPad App would constitute a material breach of the parties' agreements and an infringement of Viacom's intellectual property rights.

8.      On March 25, 2011, Cablevision informed Viacom that it disagreed with Viacom's position and that the parties' agreements provide "a complete defense to any claim" Viacom might file.  Viacom, of course, disagrees with Cablevision's assessment of the facts and the law.

9.      On April 2, 2011, despite Viacom's repeated objections, Cablevision launched the iPad App to its cable television subscribers, and included nineteen of Viacom's programming channels, in violation of the parties' agreements and Viacom's intellectual property rights.  Since that time, the parties have engaged in conversations in an attempt to resolve their dispute.  Those

conversations have not resulted in an acceptable arrangement, and Cablevision continues to refuse to remove Viacom's programming from its iPad services.

10.     Unless enjoined by this Court, the iPad App will continue to result in substantial and irreparable injury to Viacom that is not fully compensable in money damages.  Among other things, Cablevision's actions have and will continue to interfere with Viacom's opportunities to license its programming to third-party wireless and broadband content providers and to successfully distribute programming through its own wireless broadband delivery sites.  Viacom also has been and will continue to be deprived of control over the broadband distribution of its video programming signals, copyrighted programming and related trademarks, opportunities to license content over new media and devices, the ability to track viewership of its entertainment programming by users of the iPad App, and the ability to ensure the quality of the signal relaying its entertainment programming to users of the iPad App.

11.     Accordingly, Viacom asks that the Court permanently enjoin Cablevision's unlawful conduct and award Viacom damages arising out of Cablevision's unlawful conduct.

### JURISDICTION AND VENUE

12.     This Court has exclusive subject matter jurisdiction over Viacom's claims under the Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has original subject matter jurisdiction over Viacom's claims under the Lanham Act pursuant to 15 U.S.C. § 1121.

14.     This Court has supplemental subject matter jurisdiction over Viacom's claims under the common law of the State of New York pursuant to 28 U.S.C. § 1367, as such claims are substantially related to Viacom's federal copyright and trademark claims.

15.     This Court has personal jurisdiction over Cablevision.  Cablevision does

4

continuous and systematic business in New York and this District, maintains its corporate offices in New York and employs personnel in this District, and is thus physically present in the state. *See* N.Y. C.P.L.R. § 301. Cablevision has also transacted business within New York and contracted to supply goods or services in New York in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). Cablevision has also committed infringing acts outside of New York causing injury to Viacom in New York, and Cablevision regularly does or solicits business in New York, and/or derives substantial revenue from goods used or services rendered in New York, and/or expects or reasonably should expect its infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. *See id.* § 302(a)(3). In addition, plaintiffs Viacom International Inc. and Comedy Partners have their respective principal places of business in New York and in this District, and have been injured in New York by Cablevision's infringing conduct.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a).

### THE PARTIES

17.     Plaintiff Viacom International Inc. ("Viacom International"), one of the world's leading creators of programming and content across all media platforms, is a Delaware corporation with its principal place of business in New York, New York.

18.     Plaintiff MTV Networks is a division of Viacom International.

19.     Plaintiff Comedy Partners, a subsidiary of Viacom International, is a general partnership formed in New York with its principal place of business in New York, New York.

20.     Plaintiff BET Holdings LLC, a subsidiary of Viacom Inc. (the parent of Viacom International), and parent of Black Entertainment Television, Inc. (and its successor Black

Entertainment Television, LLC), is a limited liability company formed in Delaware with its principal place of business in the District of Columbia.

21.     Plaintiff Country Music Television, Inc., a subsidiary of Viacom Inc., is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

22.     Upon information and belief, defendant Cablevision Systems Corporation is a Delaware corporation with its principal place of business in Bethpage, New York.

23.     Upon information and belief, defendant CSC Holdings, LLC is a Delaware corporation with its principal place of business in Bethpage, New York.  CSC is the operating subsidiary of Cablevision Systems, and is one of the largest cable systems operators in the United States.

## FACTS

### Plaintiffs' Businesses

24.     Viacom is among the world's leading creators, producers and distributors of copyrighted television programming and other entertainment programming, all of which are marketed and promoted under Viacom's world famous trademarks.  Viacom has invested and continues to invest many millions of dollars annually to create and disseminate its entertainment programming to the millions upon millions of consumers who desire to experience the original works it creates.  Viacom's economic incentive to continue to invest substantial amounts of money is protected by contractual arrangements which confer defined and limited rights on authorized distributors and also is furthered by the protections afforded by the copyright and trademark laws.

25.     Viacom provides its entertainment programming across a variety of platforms, including television, motion pictures and digital media, through many of the world's best known

6

entertainment brands. Viacom's entertainment programming, which is marketed and promoted under some of the most recognizable trademarks in the world, reaches over 578 million households worldwide via its approximately 165 channels and multiplatform properties, which include MTV, MTV2, MTV Tr3s (formerly MTV S), VH1, VH1 Classic, VH1 Soul, Country Music Television ("CMT"), Logo, Nickelodeon/Nick at Nite, Nick Jr. (formerly, Noggin), Teen Nick (formerly, The N), Nicktoons Network, BET, Centric (formerly BET on Jazz), Comedy Central, Spike TV (formerly TNN), Palladia, and TV Land, among others.

26.      Viacom distributes and publicly performs its entertainment programming, and/or licenses the distribution and/or public performance of such works, by telecast on cable and satellite television systems, through its own internet websites, such as www.comedycentral.com and www.mtv.com, and various authorized broadband distribution channels, such as Hulu and Netflix, and over cell phones and other wireless portable devices, among other ways.

27.      Examples of authorized broadband distribution of Viacom's entertainment programming include Apple's iTunes Music Store, which sells secure digital downloads of shows from several of Viacom's cable television networks and video streaming services such as Hulu and Netflix. The programming distributed through these licensed on-line broadband distribution services include "The Daily Show with Jon Stewart," "The Colbert Report," and "South Park" from Comedy Central; "SpongeBob SquarePants," and "Dora the Explorer," among others, from Nickelodeon; and "Beavis and Butthead" and "Laguna Beach," among others, from MTV. Cablevision is streaming this and other programming through the iPad App without any authorization from Viacom.

28.      Viacom's ability to create cable television programming is dependent on two principal revenue streams that form its core business model: (i) affiliate license fees from cable,

7

satellite and telephone companies who sell cable television programming services directly to consumers, and (ii) advertising sold to national accounts. Viacom's principal revenue source in its largest sector — cable television networks — is advertising sales. Many of the world's leading consumer product and/or service companies advertise on Viacom's cable television networks and internet websites, including Proctor & Gamble, Coca Cola, and General Motors.

29.     The income Viacom generates through the sale of most of its advertising is largely dependent on the number of viewers of its cable television programming as recorded by the industry-standard audience measurement service, Nielsen Media Research ("Nielsen"). Using electronic monitoring technology, Nielsen provides advertisers with information regarding the viewership volume and demographics of particular television programs. As is well understood in the media industry, this information plays an integral role in the determination of the value of advertising space on Viacom's cable television networks. An artificially low Nielsen rating may negatively impact advertising sales as well as license fee negotiations with affiliates, who use ratings to help determine the value of cable programming networks to their subscribers.

30.     Viacom generally negotiates the rates for advertising time with national advertisers on a "CPM" or cost per thousand viewers basis. Therefore, the rates for these advertisements depend largely on the projected audience size, which in some cases Viacom guarantees to its advertisers. In order to estimate audience size and measure its delivery of the guaranteed audience size, Viacom and the companies wishing to purchase advertising time, rely heavily on the Nielsen ratings. Indeed, Nielsen reports that "[i]n the United States ... broadcasters and cable networks use our television audience ratings as the primary currency to establish the value of their airtime. . . . Advertisers use this information to plan television

8

advertising campaigns, evaluate the effectiveness of their commercial messages and negotiate advertising rates." Nielsen 2010 Annual Report.

31.     In addition to the use of ratings to set base advertising rates, cable television advertising deals often also include guarantees to the advertiser that a certain audience size (measured by ratings) will be delivered for a program in which the advertiser's commercial will run.  Pursuant to such guarantees, if the programming under-delivers in ratings, Viacom pays a penalty to the advertiser in the form of reimbursement for a portion of the price paid for an advertisement or free future advertising time known as "make-goods" or audience deficiency units.

32.     Nielsen does not currently measure the broadband distribution of television programming on wireless portable devices, such as iPad tablets, and will not be in a position to do so for a substantial period of time.

**Defendants' Businesses**

33.     Cablevision offers three subscription services to its customers (i) digital television (iO TV), (ii) high-speed internet (Optimum Online), and (iii) voice (Optimum Voice). Cablevision's three subscription services can be purchased separately or purchased together in a bundle — the "Optimum Triple Play."

34.     Cablevision's 2010 Annual Report states that Cablevision delivers a "cable television" service that includes multiple channels of video programming, and, depending on the particular subscription, may include video on demand.  The digital cable television service is marketed as iO TV in the New York metropolitan area.

35.   By contrast, Cablevision provides a separate high-speed broadband internet access service to customers. This service is provided to customers through a cable modem device. The high-speed data service is marketed as "Optimum Online" in the New York metropolitan area.

**The Agreements Between Viacom and Cablevision**

36.   Viacom and Cablevision have had a long-standing relationship whereby Viacom non-exclusively licenses its entertainment programming content to Cablevision for distribution to its cable television subscribers in exchange for monthly licensing fees based on the number of subscribers. This relationship has been memorialized in a series of written agreements entered into by the parties.

37.   The agreements between the parties limit Cablevision's rights to distribute Viacom's programming to ███████████████████████████████████ not applicable here. Therefore, Cablevision's wireless broadband distribution of Viacom's cable television programming through the iPad App is not authorized in the parties' agreements or elsewhere and exceeds the scope of the distribution rights granted thereunder.

*Grant of Rights*

The MNV Agreement

38.   On ███████████, MTVN and Cablevision entered into an agreement amending their ███ affiliation agreement (the "██████████████" to the "███████ ████████"). ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████, p. 1 (emphasis added). MTVN Services is defined as "MTV, Nickelodeon, VH1, TV Land, TNN and MTV2, collectively." ████ Amendment, p. 1.

10

The Suite Agreement

39.     MTVN entered into a separate agreement with Cablevision on ████████████,

for the distribution and exhibition of entertainment programming services referred to as the

"Suite Services," which consisted of Noggin, GAS, Nick Too, MTV2, MTV X, MTV S, VH1

Classic, VH1 Soul, VH1 Country, VHUno, NickToons and MTV Hits.  Like the ████

Amendment to the ████ MNV Agreement, the Suite Agreement limits Cablevision's distribution

rights to ████████████████████████████" (the "Suite Agreement").

Suite Agreement, p. 1 (emphasis added).  The Suite Agreement also provides for the distribution

and exhibition of Country Music Television ("CMT") on "████████████████" Suite

Agreement, p. 1 (emphasis added).  The Suite Agreement has never been amended to grant

Cablevision rights to distribute Viacom programming beyond ██████████████.

The Comedy Central Agreement

40.     On ██████████, MTVN entered into a separate agreement with Cablevision

for the distribution of Comedy Central programming services "████████████████"

(the "Comedy Central Agreement").  Comedy Central Agreement, p. 1 (emphasis added).  Like

the ████ Amendment and the Suite Agreement, the Comedy Central Agreement limits

Cablevision's distribution rights to ████████████.  *Id.*

The Logo Agreement

41.     On ██████████, MTVN entered into another separate agreement with

Cablevision regarding the distribution and exhibition rights for programming services referred to

as Logo (the "Logo Agreement").

42.     The Logo Agreement grants Cablevision the rights to distribute "████████

████████████."  In addition, the parties negotiated for and MTVN granted Cablevision, the

rights to distribute via other specific technology, in particular "███████████████

██████████████████████████████████████████████

███████████████████████████████████." Logo Agreement, §

2(a) (emphasis added).

43.    The Logo Agreement also expressly addresses distribution of the Logo

programming service through "███████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████. Logo Agreement, § 2(b).

44.    The Logo Agreement has never been amended to expand Cablevision's

distribution rights beyond cable television systems or the other specific distribution systems

expressly contemplated by the parties.

The BET Jazz Agreement

45.    On ████████████, Black Entertainment Television LLC entered into an

agreement with Cablevision regarding the distribution and exhibition rights for programming

services known as "BET on Jazz: The Jazz Channel," "BET Hip/Hop," "BET Classic," and

"BET Gospel" (the "BET Jazz Agreement").

46.    The BET Jazz Agreement, like the Logo Agreement, is very specific about the

manner in which Viacom programming may be distributed: "████████████████

███████████████████████████████████████████████

████████████████████████████████████████

█████" BET Jazz Agreement, § 2(a) (emphasis added).  Again, the BET Jazz Agreement has never been amended to expand Cablevision's distribution rights beyond these specified systems.

47.   BET Jazz was rebranded as "Centric" on September 28, 2009.

BET Agreement

48.   On █████████, the parties negotiated an agreement for the distribution of BET programs.  That agreement also very specifically provides that Cablevision may distribute Viacom programming "████████████████████████

████████████████████████████████████████

████████████████████████████" (the "BET Agreement") (emphasis added).  The BET Agreement was incorporated by reference in a contractual term sheet entered into on █████████ by MTVN, Black Entertainment Television LLC and Cablevision concerning the distribution of BET Jazz (Centric), Comedy Central and BET (the "Term Sheet").  The Term Sheet confirmed that Cablevision's right to distribute Comedy Central, BET Jazz (Centric) and BET was limited to "████████████████".  Term Sheet, p. 3 (emphasis added).

*Other Distribution Methods*

49.   Throughout the course of their relationship, Viacom and Cablevision have discussed the distribution of Viacom's programming via systems other than █████████

████████████████████████████████████████

████████████████████████████████████████

█████████.  The parties have, however, identified the circumstances under which such rights would be negotiated.

50.     As early as ████, the parties contemplated the distribution of Viacom's content

through "███████████████████" in the Comedy Central Agreement.  In that agreement,

"████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████." Comedy Central Agreement, §

5(c).

51.     The Comedy Central Agreement states that ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████. Comedy Central

Agreement, § 5(c). ████████████████████████████████████

██████████████████████████████████.

52.     ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█████████████████████████.

53.     In addition to contemplating the possibility that rights to distribute video

programming via the internet might be negotiated or granted in the future, the parties have also

negotiated specific ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

14

██████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████.

54.     Viacom has never granted Cablevision the right to distribute Viacom content

other than ██████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████, and Viacom has never granted Cablevision the right to distribute

Viacom's content via broadband.

*Other Technologies*

55.     In addition to the provisions discussed above relating to (but not granting) the

right to distribute Viacom programming through means other than ██████████████,

whenever Cablevision sought to expand the scope of its rights to distribute Viacom programming

████████████████████████████████████, Cablevision and

Viacom negotiated and entered into a signed written amendment to the agreements, or separate

agreements.  By way of example, since ██████████████, the parties have negotiated and

executed separate amendments or agreements concerning Cablevision's right to distribute certain

Viacom programming ██████████████████.  Viacom received additional

consideration from Cablevision for each additional right granted under the amendments.

56.     Moreover, on ██████████████, MTVN and Black Entertainment Television LLC

entered into a memorandum of understanding with Cablevision "██████████████████

███████████████████████████████████████

███████████████████████████████████████

15

███████████████████████████████████████████████████████

████ (the "████ MOU"). In addition to extending the term of the Existing Agreements, the

████ MOU states that the "████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ MOU, § 9.

57.    Accordingly, each time Cablevision's rights to distribute Viacom programming to

its cable subscribers were changed or expanded, the new distribution and licensing rights were

fully and specifically defined by the parties. Moreover, each amendment or agreement involved

a change to its licensing and distribution rights within the ████████████████ Cablevision

provided to its cable television subscribers, not an extension of rights to distribute Viacom's

programming via broadband.

58.    Now, contrary to the prior course of conduct between the parties, and despite the

fact that Cablevision's distribution of the Viacom programming to iPads is far more expansive

than any distribution rights Cablevision has negotiated for in the past, and involves a separate

distribution method than the one contemplated in the agreements, Cablevision, instead of

negotiating with Viacom for such rights, simply launched the iPad App with Viacom content,

and began streaming Viacom programming via broadband to the iPad.

***Signal Quality***

59.    In addition to limiting Cablevision's distribution rights to ████████████████

████, Viacom has been careful to protect the quality of the signal through which Viacom

programming is transmitted to Cablevision's cable television subscribers.

16

60.     For example, the ███ MNV Agreement states that "████████████
████████████████████████████████████████████████████████
███████████████ MNV Agreement, p. 3.

61.     Similarly, in the Comedy Central Agreement, the parties agreed that "███████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████" Comedy Central Agreement, § 5.

62.     The Logo Agreement contains the same language relating to the quality of the signal as the Comedy Central Agreement.  Logo Agreement, § 4(e).  The BET Jazz Agreement provides that the signal shall be "████████████████████████████
████████████████████████████████████████████████████████
█████████████████" BET Jazz Agreement, § 2(c).

63.     Despite the terms of these agreements, on information and belief, in order to distribute Viacom's programming via broadband to iPad tablets, Cablevision degrades and alters the quality of the signal transmitting Viacom's programming.  As such, iPad viewers experience delays and a lower quality picture.

***Trademark Clauses***

64.     Finally, in granting Cablevision the right to distribute Viacom's entertainment programming to ██████████████, Viacom has taken steps to protect its valuable trade and service marks.

65.     For example, the ███ Amendment prohibits Cablevision from using MTVN trade and service marks:

17



■ Amendment, p. 16.

66.    The Suite Agreement expressly incorporates the terms of the ■ MNV Agreement (and the ■ Amendment), including the above trademark provision. Suite Agreement, p. 1.

67.    The Comedy Central Agreement provides that:



Comedy Central Agreement, § 8(b).

68.    The Logo Agreement states that Cablevision is not to use "███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████" Logo Agreement, § 10.

69.    In the BET and Centric Agreements, ███████████████████ ███████████████████████████████████████████. BET Agreement, § 4(f); Centric Agreement, § 2(g).

**Viacom's Intellectual Property**

70.    Among Viacom's most important assets are the intellectual property rights that it owns and licenses in connection with its original entertainment programming.

***The Viacom Copyrights***

71.    Viacom is the legal or beneficial owner of the copyrights in numerous programs that have been, or will be, exhibited over cable television and a variety of other media outlets. A non-exhaustive list of such television programs, identifying representative examples of programs

18

in which Viacom (and/or its subsidiaries or affiliates) own the pertinent copyright interests (the "Copyrighted Programs"), is set forth in Exhibit A attached hereto.

72.     Each such Copyrighted Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.  In addition, each such Copyrighted Program has been or will be registered with the United States Copyright Office or is the subject of an application for registration filed with the Copyright Office.  Representative examples of the copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408(f) & 411, and implementing Copyright Office regulations, corresponding to certain of the Copyrighted Programs identified in Exhibit A, are attached hereto as Exhibit B.

73.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Viacom owns the exclusive rights, among others, to reproduce and copy its copyrighted works, to distribute copies to the public of its copyrighted works, to publicly perform its copyrighted works, to publicly display its copyrighted works, and to make derivative works based upon its copyrighted works.

74.     Except as explicitly authorized in the parties' Agreements, neither Viacom nor any other person authorized by Viacom has granted any license, permission or authorization to Cablevision to exercise any of the rights set forth above or to authorize others to exercise such rights, with respect to the Copyrighted Programs or any other works in which Viacom (and/or its subsidiaries or affiliates) own copyrights.

75.     The agreements do not authorize Cablevision's distribution of Viacom's entertainment programming, including, without limitation, the Copyrighted Programs, to portable devices, such as iPads.

*The Viacom Trademarks*

76.     Viacom is the legal or beneficial owner of numerous trade and service marks that it uses on and in connection with a wide variety of services and goods, including, but not limited to, entertainment programming and various consumer products, as well as the marketing and promotion of such services and goods, in interstate commerce throughout the United States and the world.

77.     Among the trade and service marks owned and used by Viacom, are the following which are the subject of registrations on the Principal Register of the United States Patent and Trademark Office:

| Registration No. | Mark | Registered Owner | Registration Date | Int. Cl. |
|---|---|---|---|---|
| 1,580,650 | MTV MUSIC TELEVISION | Viacom | January 30, 1990 | 41 |
| 1,818,179 | MTV MUSIC TELEVISION | Viacom | January 25, 1994 | 38, 41 |
| 2,993,172 | Vh1 | Viacom | September 6, 2005 | 38 |
| 2,995,834 | Vh1 | Viacom | September 13, 2005 | 41 |
| 3,901,512 | nick | Viacom | January 4, 2011 | 38 |
| 3,908,810 | nick | Viacom | January 18, 2011 | 41 |
| 1,390,284 | NICK | Viacom | April 15, 1986 | 41 |
| 3,283,629 | logo | Viacom | August 21, 2007 | 41 |

| Registration No. | Mark | Registered Owner | Registration Date | Int. Cl. |
|---|---|---|---|---|
| 3,403,049 | Logo | Viacom | March 25, 2008 | 38 |
| 3,730,754 | TV LAND | Viacom | December 29, 2009 | 41 |
| 1,745,015 | COMEDY CENTRAL | Comedy Partners | January 5, 1993 | 38, 41 |
| 2,533,788 | COMEDY CENTRAL | Comedy Partners | January 29, 2002 | 38, 41 |
| 3,082,867 | BET★ | Black Entertainment Television, LLC | April 18, 2006 | 41 |
| 3,765,231 | CENTRIC | Black Entertainment Television, LLC | March 23, 2010 | 38 |
| 2,902,191 | CMT | Country Music Television, Inc. | November 9, 2004 | 41 |
| 3,931,830 | GET COUNTRY | Country Music Television, Inc. | March 15, 2011 | 41 |
| 3,740,085 | CMT CROSSROADS | Country Music Television, Inc. | January 19, 2010 | 41 |

78.    The foregoing Viacom service marks (hereinafter, the "Viacom Marks") are in full force and effect, and many have achieved incontestable status pursuant to 15 U.S.C. § 1065. Copies of the registration certificates for the Viacom Marks are attached hereto as Exhibit C.

79.    In addition to being, in and of themselves, highly distinctive marks and designs, as a result of Viacom's uninterrupted and continuing use of the Viacom Marks on and in connection with a wide variety of services and goods, the Viacom Marks have acquired distinctiveness, and have developed a strong secondary meaning among consumers and the trade.

21

Accordingly, the Viacom Marks immediately identify Viacom as the exclusive source of services

and goods bearing the Viacom Marks, and signify goodwill of incalculable value.

**Defendant's Unlawful Conduct**

80.     On April 2, 2011, Cablevision launched the iPad App with access to Viacom's

content despite Viacom's express objections and in direct violation of the distribution provisions

of the Agreements.

81.     On information and belief, in order to distribute Viacom content to iPads,

Cablevision converts the signal it receives from content providers, such as Viacom, into a

different format at lower bitrates (i.e., lower transmission speeds) and at reduced quality. As a

result, Cablevision cable television subscribers who have downloaded the iPad App receive two

separate signals into their homes. One signal — the cable television signal — is formatted for

traditional cable television and is sent to the set-top box. The other signal — the broadband

signal — is formatted using Internet Protocol and is sent to the cable modem for transmission via

wireless router to the iPad.

82.     The signal transmitted to viewers via broadband is not secure, as it is possible to

decrypt the signal transmitted from the cable modem to the iPad and send the Viacom

programming to another device, such as a computer. The programming can then be copied and

distributed to non-Cablevision cable television subscribers.

83.     Despite Viacom's unequivocal objection to Cablevision's distribution of Viacom

programming via the iPad App, Cablevision's marketing and promotional materials for the iPad

App launch featured some of the most valuable and recognizable Viacom Marks. Such

unauthorized use of the Viacom Marks has created and continues to create the false and

22

misleading impression that Viacom has authorized or sponsored Cablevision's broadband distribution of Viacom programming via the iPad App.

84.     Viacom, upon learning that Cablevision was planning to launch the iPad App, wrote to Cablevision to demand that it cease and desist from distributing Viacom's entertainment programming via the iPad App. Cablevision subsequently informed Viacom that it declined to accede to Viacom's demand and, several days later, launched the iPad App.

85.     Cablevision's unauthorized broadband distribution of Viacom's entertainment programming via the iPad App constitutes a material breach of the parties' long-standing distribution relationship and a direct infringement of the Copyrighted Programs and Viacom Marks.

**Cablevision's Unlawful Conduct Has Caused and Will
Continue to Cause Irreparable Harm to Viacom**

86.     Cablevision's unilateral launch of the iPad App and its unauthorized broadband distribution of Viacom's cable television programming has caused, and continues to cause, Viacom significant and irreparable harm.

87.     As explained above, Nielsen does not track iPad viewership of entertainment programming. This is of tremendous significance because Viacom relies on the Nielsen ratings to sell its advertising time on its networks, and the greater the audience size, the greater the market value of the advertising time. The unauthorized broadband distribution of Viacom programming via the iPad App reduces the trackable viewership of Viacom's entertainment programming, thereby harming Viacom's advertising-supported business model in ways which may be difficult to measure.

88.     Moreover, Viacom often guarantees its advertisers an estimated minimum Nielsen viewership rating. Pursuant to such guarantees, if Nielsen subsequently reports lower viewership

than that which was guaranteed, Viacom is required to reimburse the advertiser and/or provide additional advertising time, at no charge, to that advertiser. Thus, upon information and belief, the unauthorized broadband distribution of Viacom programming via the iPad App will harm Viacom's advertising revenues.

89.    In addition, and equally important, the unauthorized broadband distribution of Viacom programming via the iPad App has significantly harmed Viacom's ability to sell its entertainment programming to Cablevision, to sell its entertainment programming to third-party broadband distributors and to develop its own broadband services.

90.    Selling the content of its networks to broadband content providers is an important component of Viacom's future business plan. The unauthorized distribution of Viacom's entertainment programming via the iPad App has and will continue to negatively impact the viability of that business. Third party broadband content distributors have negotiated for the right to distribute Viacom's content over broadband networks, agreed to pay a significant licensing fee to Viacom and guaranteed Viacom a significant amount in advertising revenue. By distributing Viacom's content to iPads without authorization or compensation to Viacom, Cablevision has secured a competitive advantage over these third party broadband content distributors who negotiated in good faith. As such, Cablevision has compromised Viacom's ability to enter into future contracts for the right to distribute Viacom's content in the highly innovative and growing broadband market.

91.    Finally, Cablevision's broadband transmission of Viacom's programming is not secure, as it is possible to decrypt the signal sent from the cable modem to the iPad and send the signal (and, therefore, Viacom's programming) to other devices such as computers. Once the signal is sent to a computer it can be copied and sent to non-Cablevision cable television

24

subscribers. This lack of security in Cablevision's distribution of Viacom content poses risks to Viacom and greatly undermines Viacom's business model.

92.      For the foregoing reasons, Cablevision's unauthorized broadband distribution of Viacom's entertainment programming via the iPad App constitutes a material breach of the parties' Agreements, and an infringement of Viacom's intellectual property rights, that have and will continue to cause immeasurable harm to Viacom.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract - Unauthorized Distribution of the MTVN Services)

93.      The allegations set forth in paragraphs 1 through 92 hereof are adopted and incorporated by reference as if fully set forth herein.

94.      As set forth above, Cablevision entered into valid and binding written agreements with MTVN (the ▮▮▮ MNV Agreement and amendments thereto), for the distribution of the MTVN Services programming via authorized technologies and channels of distribution.

95.      Cablevision has breached its agreements with MTVN by engaging in the unauthorized broadband distribution of the MTVN Services via the iPad App.

96.      MTVN has fully performed its obligations under the agreements.

97.      As a result of Cablevision's aforesaid breach of the agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

98.      In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

**COUNT II**
**(Breach of Contract – Unauthorized Distribution of the Suite Services and CMT)**

99.     The allegations set forth in paragraphs 1 through 98 hereof are adopted and incorporated by reference as if fully set forth herein.

100.     As set forth above, Cablevision entered into valid and binding written agreements with MTVN (the Suite Agreement and amendments thereto), for the distribution of the Suite Services and CMT programming via authorized technologies and channels of distribution.

101.     Cablevision has breached its agreements with MTVN by engaging in the unauthorized broadband distribution of the Suite Services and CMT via the iPad App.

102.     MTVN has fully performed its obligations under the agreements.

103.     As a result of Cablevision's aforesaid breach of the agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

104.     In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

**COUNT III**
**(Breach of Contract – Unauthorized Distribution of Comedy Central,**
**BET and Centric Programming)**

105.     The allegations set forth in paragraphs 1 through 104 hereof are adopted and incorporated by reference as if fully set forth herein.

106.     As set forth above, Cablevision entered into valid and binding written agreements with MTVN and Black Entertainment Television LLC (the Comedy Central Agreement and the BET Jazz Agreement, and amendments thereto, including without limitation the ▮▮▮ Term Sheet), for the distribution of Comedy Central, BET and Centric programming via authorized technologies and channels of distribution.

26

107. Cablevision has breached its agreements with MTVN and Black Entertainment Television LLC by engaging in the unauthorized broadband distribution of Comedy Central, BET and Centric programming via the iPad App.

108. MTVN and Black Entertainment Television LLC have fully performed their obligations under the agreements.

109. As a result of Cablevision's aforesaid breach of the agreements, MTVN and Black Entertainment Television LLC have been irreparably harmed and have no adequate remedy at law.

110. In addition, MTVN and Black Entertainment Television LLC have suffered monetary damages in an amount to be determined at trial.

<u>COUNT IV</u>
**(Breach of Contract – Unauthorized Distribution of Logo Programming)**

111. The allegations set forth in paragraphs 1 through 110 hereof are adopted and incorporated by reference as if fully set forth herein.

112. As set forth above, Cablevision entered into valid and binding written agreements with MTVN (the Logo Agreement and amendments thereto), for the distribution of Logo programming via authorized technologies and channels of distribution.

113. Cablevision has breached its agreements with MTVN by engaging in the unauthorized broadband distribution of Logo programming via the iPad App.

114. MTVN has fully performed its obligations under the agreements.

115. As a result of Cablevision's aforesaid breach of the agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

116. In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT V
**(Breach of Contract - Materially Degrading Quality of MTVN's Programming )**

117.    The allegations set forth in paragraphs 1 through 116 hereof are adopted and incorporated by reference as if fully set forth herein.

118.    As set forth above, Cablevision entered into valid and binding written agreements with MTVN for the distribution of MTVN's entertainment programming that prohibits Cablevision, in transmitting the signal for MTVN channels to subscribers, from "███████ ███████████████████████████████████████████████████████ ████████████████" ████ MNV Agreement, p. 3.

119.    Cablevision has breached this provision of the ████ MNV Agreement with MTVN by degrading and interfering with the audio and/or video signals of the MTVN Services in a technical or perceptual manner in connection with its unauthorized broadband distribution of MTVN's entertainment programming via the iPad App.

120.    MTVN has fully performed its obligations under the Agreements.

121.    As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

122.    In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT VI
**(Breach of Contract - Materially Degrading Quality of Comedy Central's Programming)**

123.    The allegations set forth in paragraphs 1 through 122 hereof are adopted and incorporated by reference as if fully set forth herein.

124.    As set forth above, Cablevision entered into valid and binding written agreements with MTVN for the distribution of Comedy Central's entertainment programming that requires

Cablevision to distribute Comedy Central "████████████████████████

████████████████████████████████████████████████████████."

Comedy Central Agreement, § 5.

125.   Cablevision has breached this provision of the Comedy Central Agreement with

MTVN by degrading and interfering with the audio and video signals of the Comedy Central

Services in connection with its unauthorized broadband distribution of MTVN's entertainment

programming via the iPad App.

126.   MTVN has fully performed its obligations under the Agreements.

127.   As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been

irreparably harmed and has no adequate remedy at law.

128.   In addition, MTVN has suffered monetary damages in an amount to be

determined at trial.

## COUNT VII
### (Breach of Contract - Materially Degrading Quality of Logo's Programming)

129.   The allegations set forth in paragraphs 1 through 128 hereof are adopted and

incorporated by reference as if fully set forth herein.

130.   As set forth above, Cablevision entered into valid and binding written agreements

with MTVN for the distribution of Logo's entertainment programming that requires Cablevision

to distribute Logo "████████████████████████████████████

████████████████████████████████." Logo Agreement, §

4(e).

131.   Cablevision has breached this provision of the Logo Agreement with MTVN by

degrading and interfering with the audio and video signals of the Logo programming in

connection with its unauthorized broadband distribution of MTVN's entertainment programming via the iPad App.

132.    MTVN has fully performed its obligations under the Agreements.

133.    As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

134.    In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT VIII

### (Breach of Contract - Materially Degrading Quality of Centric's Programming)

135.    The allegations set forth in paragraphs 1 through 134 hereof are adopted and incorporated by reference as if fully set forth herein.

136.    As set forth above, Cablevision entered into valid and binding written agreements with BET for the distribution of Centric's entertainment programming that requires Cablevision to use a signal that is " ████████████████████████████

████████████████████████████████████████████

████████████████ " BET Jazz Agreement, § 2(c).

137.    Cablevision has breached this provision of the BET Jazz Agreement by degrading and interfering with the audio and video signals of the Centric programming in connection with its unauthorized broadband distribution of Centric's entertainment programming via the iPad App.

138.    BET has fully performed its obligations under the Agreements.

139.    As a result of Cablevision's aforesaid breach of the Agreements, BET has been irreparably harmed and has no adequate remedy at law.

140.   In addition, BET has suffered monetary damages in an amount to be determined at trial.

## COUNT IX
### (Breach of Contract - Unauthorized Use of the MTVN Services Trademarks)

141.   The allegations set forth in paragraphs 1 through 140 hereof are adopted and incorporated by reference as if fully set forth herein.

142.   As set forth above, Cablevision entered into valid and binding written agreements with MTVN for the distribution of the MTVN Services.  These agreements grant Cablevision the limited right, under certain circumstances, to utilize the trade and service marks associated with the MTVN Services in connection with the promotion of such services.

143.   The agreements, however, prohibit Cablevision from using MTVN trade and service marks " ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████." ███████ Amendment, p. 16.

144.   Cablevision has breached this provision of the agreements with MTVN by using trade and/or service marks associated with the MTVN Services, without authorization, in connection with the commercial advertising and promotion of its unauthorized broadband distribution of the MTVN Services via iPad App.

145.   MTVN has fully performed its obligations under the agreements.

146.   As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

147.   In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT X
### (Breach of Contract – Unauthorized Use of the Suite Services and CMT Trademarks)

148.    The allegations set forth in paragraphs 1 through 147 hereof are adopted and incorporated by reference as if fully set forth herein.

149.    As set forth above, Cablevision entered into valid and binding written agreements with MTVN for the distribution of the Suite Services and CMT. These agreements grant Cablevision the limited right, under certain circumstances, to utilize the trade and service marks associated with the MTVN Services in connection with the promotion of such services.

150.    The agreements, however, prohibit Cablevision from using MTVN and CMT trade and service marks "████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████." ██ Amendment, p. 16; ¶ Suite Agreement, p. 9.

151.    Cablevision has breached this provision of the agreements with MTVN by using trade and/or service marks associated with the Suite Services, without authorization, in connection with the commercial advertising and promotion of its unauthorized broadband distribution of the Suite Services via iPad App.

152.    MTVN has fully performed its obligations under the agreements.

153.    As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

154.    In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT XI
### (Breach of Contract - Unauthorized Use of the Comedy Central,
### BET and Centric Trademarks)

155.    The allegations set forth in paragraphs 1 through 154 hereof are adopted and

incorporated by reference as if fully set forth herein.

156.    As set forth above, Cablevision entered into valid and binding written agreements

with MTVN and Black Entertainment Television LLC for the distribution of Comedy Central,

BET and Centric programming.  These agreements grant Cablevision the limited right, under

certain circumstances, to utilize the trade and service marks associated with Comedy Central,

BET and Centric programming in connection with the promotion of such programming.

157.    The agreements, however, provide that:



Comedy Central Agreement, § 8(b).

158.    Cablevision has breached this provision of the agreements with MTVN and Black

Entertainment Television LLC by using trade and/or service marks associated with Comedy

Central, BET and Centric programming, without authorization, in connection with the

commercial advertising and promotion of its unauthorized broadband distribution of Comedy

Central, BET and Centric programming via iPad App.

159.    MTVN and Black Entertainment Television LLC have fully performed their

obligations under the agreements.

33

160.    As a result of Cablevision's aforesaid breach of the Agreements, MTVN and Black Entertainment Television LLC have been irreparably harmed and have no adequate remedy at law.

161.    In addition, MTVN and Black Entertainment Television LLC have suffered monetary damages in an amount to be determined at trial.

### COUNT XII
### (Breach of Contract - Unauthorized Use of the Logo Trademarks)

162.    The allegations set forth in paragraphs 1 through 161 hereof are adopted and incorporated by reference as if fully set forth herein.

163.    As set forth above, Cablevision entered into valid and binding written agreements with MTVN for the distribution of Logo Programming.  These agreements grant Cablevision the limited right, under certain circumstances, to utilize the trade and service marks associated with Logo programming in connection with the promotion of such services.

164.    The agreements, however, state that Cablevision is not to use " ███████████

████████████████████████████████████████████████

████████████████████████████████ " Logo Agreement, § 10.

165.    Cablevision has breached this provision of the agreements with MTVN by using trade and/or service marks associated with Logo programming, without authorization, in connection with the commercial advertising and promotion of its unauthorized broadband distribution of Logo programming via iPad App.

166.    MTVN has fully performed its obligations under the agreements.

167.    As a result of Cablevision's aforesaid breach of the Agreements, MTVN has been irreparably harmed and has no adequate remedy at law.

34

168.     In addition, MTVN has suffered monetary damages in an amount to be determined at trial.

## COUNT XIII
### (Copyright Infringement – 17 U.S.C. § 501)

169.     The allegations set forth in paragraphs 1 through 169 hereof are adopted and incorporated by reference as if fully set forth herein.

170.     Viacom (and/or its subsidiaries or affiliates) is the legal or beneficial owner of the copyrights in the Copyrighted Programs, among others.  For purposes of this Count XIII only, Viacom shall not include BET Holdings LLC.

171.     Cablevision, without the permission or consent of Viacom, and without authority, is (i) copying and purporting to authorize the copying of, (ii) publicly performing and purporting to authorize the public performance of, (iii) publicly displaying and purporting to authorize the public display of, and/or (iv) publicly distributing and purporting to authorize the distribution of the Copyrighted Programs via the unauthorized broadband distribution of such works to portable devices by means of the iPad App.  Cablevision's conduct constitutes infringement of Viacom's exclusive rights under the Copyright Act.

172.     Cablevision thereby has willfully infringed Viacom's rights in the Copyrighted Programs, and upon information and belief, will continue to willfully infringe Viacom's rights in the Copyrighted Programs and to act in bad faith, unless restrained by this Court.

173.     Upon information and belief, by its acts, Cablevision has made and will continue to make substantial profits and gains to which it is not in law or in equity entitled.

174.     As a direct and proximate result of Cablevision's infringement of Viacom's rights in the Copyrighted Programs, Viacom is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Viacom's election, pursuant to 17 U.S.C. § 504(b), Viacom

35

shall be entitled to its actual damages plus Cablevision's profits from infringement, as will be proven at trial.

175.    Cablevision's conduct is causing and, unless enjoined by this Court, will continue to cause Viacom irreparable injury, and Viacom has no adequate remedy at law.

**COUNT XIV**
**(Trademark Infringement – 15 U.S.C. § 1114)**

176.    The allegations set forth in paragraphs 1 through 175 hereof are adopted and incorporated by reference as if fully set forth herein.

177.    As detailed above, Viacom holds valid and subsisting trademark registrations for the Viacom Marks, and has used them extensively and continuously, in interstate commerce throughout the United States.  The Viacom Marks are inherently distinctive, and have acquired secondary meaning.

178.    As set forth above, Cablevision entered into valid and binding written Agreements with Viacom, for the distribution of Viacom's entertainment programming via authorized technologies and channels of distribution.

179.    By its acts alleged herein, Cablevision is using marks that are identical and/or substantially indistinguishable from the Viacom Marks to promote a service other than Cablevision's ███████████, and have infringed, and continue to infringe the Viacom Marks, in violation of 15 U.S.C. § 1114.

180.    In addition, upon information and belief, Cablevision's use of marks that are identical to  the MTVN Marks has caused, is intended to cause, and is likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to Viacom's affiliation, sponsorship or endorsement of the iPad App and the broadband distribution of Viacom's programming via the iPad App.

36

181.    Upon information and belief, Cablevision has acted with knowledge of Viacom's ownership of the Viacom Marks, knowledge of its lack of authorization to utilize the Viacom Marks in connection with the iPad App and the inferior services provided thereby, and with the deliberate intention to unfairly benefit from the incalculable goodwill symbolized by the Viacom Marks.

182.    Cablevision's acts constitute willful trademark infringement in violation of 15 U.S.C. § 1114.

183.    Upon information and belief, by its actions, Cablevision intends to continue its infringing conduct, and to willfully infringe the Viacom Marks, unless restrained by this Court.

184.    Upon information and belief, by its willful acts, Cablevision has made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

185.    Cablevision's acts have damaged and will continue to irreparably damage Viacom, and Viacom has no adequate remedy at law.

## COUNT XV
### (False Designation of Origin – 15 U.S.C. § 1125)

186.    The allegations set forth in paragraphs 1 through 185 hereof are adopted and incorporated by reference as if fully set forth herein.

187.    The Viacom Marks are inherently distinctive and have acquired strong secondary meaning in the marketplace and immediately indicate Viacom as the exclusive source of services and products they are used in connection with.

188.    Cablevision, without authorization or approval from Viacom, has used marks that are identical to the Viacom Marks in connection with its unauthorized distribution of Viacom's programming via the iPad App, and its marketing and promotion of the iPad App and the services it provides.

37

189.     Upon information and belief, Cablevision's use of marks that are identical to the Viacom Marks has caused, is intended to cause, and is likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to Viacom's affiliation, connection, association or endorsement of the iPad App and the unauthorized broadband distribution of Viacom's programming that it facilitates.

190.     Upon information and belief, Cablevision has acted with knowledge of Viacom's ownership of the Viacom Marks, and with the deliberate intention to unfairly benefit from the incalculable goodwill symbolized by the Viacom Marks.

191.     Cablevision's acts constitute a false designation of origin, and false and misleading descriptions of fact, in violation of 15 U.S.C. § 1124(a).

192.     Upon information and belief, by its actions, Cablevision intends to continue its infringing conduct, and to willfully infringe the Viacom Marks, unless restrained by this Court.

193.     Upon information and belief, by its willful acts, Cablevision has made and will continue to make substantial profits and gains to which it is not in law or in equity entitled.

194.     Upon information and belief, Cablevision's acts have caused and will continue to cause irreparable harm to Viacom, and Viacom has no adequate remedy at law.

## COUNT XVI
### (Common Law Unfair Competition)

195.     The allegations set forth in paragraphs 1 through 194 hereof are adopted and incorporated by reference as if fully set forth herein.

196.     Cablevision's aforesaid conduct constitutes willful unfair competition in violation of the common law of the State of New York.

197.     Upon information and belief, by its actions, Cablevision intends to continue its unfair competition, unless restrained by this Court.

198.    Upon information and belief, by its willful acts, Cablevision has made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

199.    Upon information and belief, Cablevision's acts have caused and will continue to cause irreparable harm to Viacom, and Viacom has no adequate remedy at law.

## COUNT XVII
### (Declaratory Judgment)

200.    The allegations set forth in paragraphs 1 through 199 hereof are adopted and incorporated by reference as if fully set forth herein.

201.    There is an actual controversy between Viacom and Cablevision concerning Cablevision's rights under the Agreements to distribute Viacom's entertainment programming to portable devices via broadband by way of the iPad App.

202.    As set forth more fully above, Viacom's Agreements with Cablevision relate only to Cablevision's distribution of Viacom programming to Cablevision's ███████████████ ████████████, and do not grant Cablevision the right to distribute such programming via broadband.

203.    Viacom has the right to █████████████████████████████ ██████████████████████████████████████ ████████, pursuant to the Comedy Central Agreement, Section 8, and ███████████████ ████████████████████████, pursuant to the BET Jazz Agreement, Section 12 and the Logo Agreement, Section 17.

204.    By virtue of the acts alleged more fully above, Cablevision has materially breached Viacom's contractual rights under the Agreements, and continues to materially breach the Agreements by distributing Viacom cable television programming content via broadband to the iPad App.

205.    Viacom is entitled to a declaration that Cablevision is in material breach of the agreements under Section 8 of the Comedy Central Agreement, Section 12 of the BET Jazz Agreement and Section 17 of the Logo Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Viacom demands judgment be entered against Cablevision as follows:

A.    Finding that:

(i)    as to Count 1, Cablevision breached the ████ MNV Agreement and amendments thereto by engaging in the unauthorized broadband distribution of MTVN's entertainment programming via the iPad App;

(ii)    as to Count 2, Cablevision breached the Suite Agreement and amendments thereto by engaging in the unauthorized broadband distribution of the Suite Services and CMT programming via the iPad App;

(iii)    as to Count 3, Cablevision breached the Comedy Central, BET and BET Jazz Agreements and amendments thereto by engaging in the unauthorized broadband distribution of Comedy Central, BET and Centric programming via the iPad App;

(iv)    as to Count 4, Cablevision breached the Logo Agreement and amendments thereto by engaging in the unauthorized broadband distribution of Logo programming via the iPad App;

(v)    as to Count 5, Cablevision breached the ████ MNV Agreement and amendments thereto by degrading and interfering with the audio and video signals of the MTVN Service(s) in a technical or perceptual manner;

(vi)    as to Count 6, Cablevision breached the Comedy Central Agreement and amendments thereto by failing to distribute Comedy Central in a manner which permits reception

40

by Cablevision's subscribers of a quality at least as good as the quality of the signal transmitted by MTVN.

(vii)   as to Count 7, Cablevision breached the Logo Agreement and amendments thereto by failing to distribute the Logo programming in a manner which permits reception by Cablevision's subscribers of a quality at least as good as the quality of the signal transmitted by MTVN.

(viii)   as to Count 8, Cablevision breached the BET Jazz Agreement and amendments thereto by failing to distribute the Centric programming using a signal which, at a minimum, meets the specifications of the Federal Communications Commission and/or relevant franchising authority.

(ix)   as to Count 9, Cablevision breached the ▮▮▮ MNV Agreement and amendments thereto by using trade and service marks associated with the MTVN Services, without authorization, in connection with the commercial advertising, promotion and delivery of the iPad App;

(x)   as to Count 10, Cablevision breached the Suite Agreement and amendments thereto by using trade and service marks associated with the Suite Services and CMT, without authorization, in connection with the commercial advertising, promotion and delivery of the iPad App;

(xi)   as to Count 11, Cablevision breached the Comedy Central, BET and BET Jazz Agreements and amendments thereto by using trade and service marks associated with Comedy Central, BET and Centric programming, without authorization, in connection with the commercial advertising, promotion and delivery of the iPad App;

41

(xii)   as to Count 12, Cablevision breached the Logo Agreement and amendments thereto by using trade and service marks associated with Logo programming, without authorization, in connection with the commercial advertising, promotion and delivery of the iPad App;

(xiii)   as to Count 13, Cablevision engaged in willful copyright infringement against Viacom in violation of the U.S. Copyright Act, 17 U.S.C. § 501;

(xiv)   as to Count 14, Cablevision engaged in willful trademark infringement and/or trademark counterfeiting against Viacom in violation of the Lanham Act, 15 U.S.C. § 1114;

(xv)   as to Count 15, Cablevision engaged in willful acts of false designation of origin and unfair competition against Viacom in violation of the Lanham Act, 15 U.S.C. § 1125;

(xvi)   as to Count 16, Cablevision engaged in acts of unfair competition against Viacom in violation of the common law of the State of New York;

B.   As to Count 17, declaring that Cablevision has materially breached the Agreements.

C.   Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure; the Lanham Act, 15 U.S.C. § 1116; the U.S. Copyright Act, 17 U.S.C. § 502, permanently restraining and enjoining Cablevision and all those persons or entities in active concert or participation with them from:

(i)   copying, publicly performing, displaying and/or distributing Viacom's entertainment programming, including, without limitation, the Copyrighted Programs, via broadband distribution to wireless portable devices, such as iPads via the iPad App, and any

42

other new and/or emerging media technology platform not expressly covered by the Agreements; and

      (ii)    using the Viacom Marks or any colorable imitations of the Viacom Marks, on or in connection with the advertising, promotion or delivery of services in connection with the iPad App, or any other use of the Viacom Marks not expressly authorized in the Agreements.

     D.    Awarding Viacom:

      (i)    Cablevision's profits and Viacom's damages and/or statutory damages, attorneys' fees and costs, to the full extent provided for by the U.S. Copyright Act, 17 U.S.C. §§ 504 and 505;

      (ii)    statutory damages of $2,000,000 per counterfeit mark in accordance with the Lanham Act, 15 U.S.C. § 1117, or alternatively, ordering Cablevision to account to and pay to Viacom all profits realized by its wrongful acts, and also awarding Viacom its actual damages, and directing that such profits or actual damages be trebled in accordance with the Lanham Act, 15 U.S.C. § 1117;

      (iii)    actual and punitive damages to which it is entitled under applicable federal or state law;

      (iv)    costs, attorneys' fees, investigatory fees and expenses to the full extent provided by the U.S. Copyright Act, 17 U.S.C. §§ 504 and 505; and the Lanham Act, 15 U.S.C. § 1117; and

      (v)    pre- and post-judgment interest on any monetary award made part of the judgment against Cablevision.

E.    Awarding Viacom such additional and further relief as may be available under applicable federal, state or common law or that the Court otherwise deems just under the circumstances.

Dated: New York, New York
       June 23, 2011

ARNOLD & PORTER LLP

By:    Peter L. Zimroth
       Peter L. Zimroth
       peter.zimroth@aporter.com
       Michael D. Schissel
       michael.schissel@aporter.com
       Lucy S. McMillan
       lucy.mcmillan@aporter.com
       399 Park Avenue
       New York, New York 10022
       Tel:  (212) 715-1000
       Fax:  (212) 715-1390

       Robert A. Garrett
       555 Twelfth Street N.W.
       Washington, DC 20004
       Tel:   (202) 942-5444
       Fax:   (202) 942-5999

       *Attorneys for Plaintiffs*